**FEDERAL DEPOSIT INS. CORPORATION v. WINTON et al.**

Nos. 24, 8.

District Court, E. D. Tennessee, Winchester Division.

July 8, 1941.

Motion for New Trial Denied Oct. 15, 1941.

142

J. Roy Hickerson, of Winchester, Tenn., and W. J. Price, of Washington, D. C., for plaintiff.

Chester C. Chattin, of Winchester, Tenn., for defendants.

DARR, District Judge.

The facts and the procedure justify a compliance with the request that the court declare a construction of a portion of the Banking Act of 1935, 49 Stat. 684, Section 12B of the Federal Reserve Act, as amended, 12 U.S.C.A. § 264, being that portion which is commonly known as the Federal Deposit Insurance Law.

The Home Bank and Trust Company of Winchester, Tennessee, prior to April 1, 1938, was an insured bank under provisions of said Act. By proper procedure this insured status was terminated on March 31, 1938. The Bank was closed on August 18, 1938, and its affairs wound up by insolvency proceedings.

At the time the insurance status of the Bank terminated the defendants and others were depositors of said Bank, having various types of deposits. After the insurance status terminated, the defendants and others continued to do business with said Bank making many additional deposits, and perhaps new deposits, and many withdrawals, which continued on up until the Bank was closed.

The question to be determined is where additional deposits, or new deposits, were made and withdrawals were had are all withdrawals to be charged against the insured deposit or only such withdrawals as encroach upon the amount of the deposit at the time of the termination of the insured status.

The particular portion of said Sec. 12B that will determine the question is to be found under (i) (1), as follows:

"After the termination of the insured status of any bank under the provisions of this paragraph, the insured deposits of each depositor in the bank on the date of such termination, less all subsequent withdrawals from any deposits of such depositor, shall continue for a period of two years to be insured, and the bank shall continue to pay to the Corporation assessments as in the case of an insured bank during such period. No additions to any such deposits and no new deposits in such bank made after the date of such termination shall be insured by the Corporation, and the bank shall not advertise or hold itself out as having insured deposits unless in the same connection it shall also state with equal prominence that such additions to deposits and new deposits made after such date are not so insured."

The plaintiff insists that the words "any deposits" appearing in the first sentence above quoted intends and includes deposits at the time of the termination of the insured status and deposits made after the termination of this status. The defendants insist that this term "any deposits" refers to deposits at the time of the termination of the insured status with no reference to any deposits made thereafter.

Attention is called to the fact that the word "deposits" does not appear in the lengthy paragraph of said subsection (i) (1), except in the sentences quoted. Therefore, when the words "such deposits" appear in the second sentence above quoted the word "such" refers to some preceding announcement of the same type or character of deposit either expressly or contextually. It plainly appears that there is no contextual inference to which the word "such" could refer. The result is that the words "such deposits" must necessarily refer to the words "any deposits" or the words "insured deposits" as appears in the preceding sentence.

It is noted that the beginning of the second sentence is "No additions to any such deposits * * *", which would eliminate the idea that the words "such deposits" could refer to the words "insured deposits" for the reason that there can be no additions to insured deposits. Insured deposits are fixed by operation of the law and the depositor cannot add to or take from by his action. A depositor may increase his deposit and by operation of law increase his insured deposit but when the maximum of insured deposits is reached, there can be no addition thereto by other deposits.

It necessarily results that the words "such deposits" refer back to the words "any deposits" which would mean that the words "any deposits" and the words "such deposits" mean one and the same thing.

The words "any deposits", therefore, could not include all deposits until the Bank failed for the reason that it would thereby be impossible to make additions thereto.

Therefore, the words "No additions to any such deposits" necessarily mean that there can be no additions to the deposits on hand at the time of the termination of the insured status which will be insured. Thus "such deposits" would be the deposits as they were at the time of the termination of the insured status.

Then the inevitable conclusion is that the words "any deposits" mean the deposits as they stood at the time of the termination of the insured status.

The word "any" in this connection is evidently put in as a matter of precaution just as it was put in in that part of the second sentence where it says "any" such deposits. The word "deposits" as defined in the Act includes all character and types of deposits and it is the judgment of the court that the word "any" was added to keep down confusion where a depositor might make withdrawals from only one type of deposit and claim insurance on the other type.

This construction of this particular portion of the Act seems to be in full accord with the intention and spirit of the whole section of this Act. It has been said that this chapter was intended to prevent runs on banks by depositors, to preserve solvency of insured banks, and thus to keep open the channels of trade and the commercial exchange.

■ The particular portion of the section under consideration here is evidently intended to extend the insurance in a limited way after a bank was in a precarious condition and thus to give such bank an opportunity to rehabilitate.

If it should be the law that withdrawals from new business in a bank would be charged against the insured deposit of a depositor, there would be little probability of new business.

The strong probability is that there would be a run on a bank and a change by the depositors to an insured bank. Whereas, if there is an insurance upon the amount the depositor has in the bank at the time of the termination of the insured status for a period of two years and only such withdrawals from this deposit to be charged against the insured deposit, there is some chance for a bank to persuade its depositors to continue business. Thus, it would appear that if the plaintiff's contention is a proper construction of this law, the very purpose of this whole section would be largely defeated.

There is also significance to sustain this construction of this portion of the chapter wherein it is provided in the second sentence above quoted that the bank shall not advertise that it has insured deposits unless it states with equal prominence that there is no insurance on additions to deposits and new deposits made after such date. If it had been intended that a withdrawal from all new business would be charged against the insured deposit, it would seem that the Congress would have provided that the public be also advised of this important situation.

Another question that might bring up differences of opinion is where a depositor makes additions to a deposit, whether it be a checking account, a savings account, or a certificate of deposit, as to whether there can be an identification of the insured deposit.

■ It appears from a review of this whole section of the Act that the insurance is not intended to be a protection upon a particular fund but is an insurance for protection of a set amount of money. Therefore, the situation is not analogous to the identification of a trust fund but is more like the doctrine of "shifting risk" in fire insurance law.

Therefore, it is the judgment of the court that additions to deposits and withdrawals would not affect the insured deposit unless the balance at any time was less than the deposits at the time of the termination of the insured status.

It is the idea of this court that the intention of this portion of the chapter was to limit the insurance in this particular: All withdrawals from any deposit on hand at the time of the termination of the insured status is to be charged against the insured deposit, whereas, while the insured status was in effect the withdrawals from any deposit was not chargeable against the insured status but charged against the deposit. Whether this would effect the insured deposit would depend upon the amount up-

144

on deposit. Also, that no additions to any such deposit and no new deposits would have insurance.

Under this section of the Act a bank is required to keep up its assessments and be subject to the law just the same as when the insured status did exist. The result is a limited amount of insurance which would tend to benefit the bank, the Corporation, and the public.

The court's conclusions are:

(1) There is no insurance on additions to deposits that were in the Bank at the time the insurance status terminated. There is no insurance on new deposits.

■ (2) The amount of insurance due any depositor at the time the Bank closed who made additions to the deposits he had at the time the insurance status terminated should be estimated by an examination of his account. If it should appear at any time or times within said period that his balance was less than the amount he had at the time the insurance status terminated, the difference must be charged against the insured deposit. The type or character of his deposit is not material for consideration.

Only withdrawals that encroach upon the amount of his deposit at the time the insurance status terminated are to be charged against his insured deposit.

If the depositor's amount of deposit remains as much or more than it was at the time the insurance status terminated, then his insured deposit is not affected.

All facts having been agreed to by stipulations, it is unnecessary for the court to make a findings of fact and the conclusions of law are as stated in this opinion.

Let a judgment be prepared in accord herewith.

### On Motion for New Trial.

The plaintiff has presented a motion for new trial and very seriously contends that its claims are meritorious.

After carefully reading the briefs and again giving diligent study to the portion of the Act in question, and its history, I find no reason to change my former opinion.

There are one or two ideas suggested by the arguments and briefs that will be considered.

From a history of the legislation it seems that there was some concern about what could be done with State member banks if it became necessary to terminate the insured status. This came about by the situation wherein it was provided that national member banks could be closed under such conditions but that there would be no federal authority to close a State member bank.

It would seem that it was desired to protect the Corporation where it was necessary to terminate the insured status of a State member bank in the same manner as if it were a national member bank.

The construction the court has placed upon the portion of the Act involved gets this result. In fact it gets better result in that the Corporation is benefited for the reason that withdrawals from any deposit on hand are charged against the insured deposit after the termination of the insured status of a State member bank.

■ If the insured status is withdrawn from a national member bank and it is closed by the appointment of a receiver the status of the insured deposits is of the date of the withdrawal and of the closing of the bank. Likewise, the status of the insurance on deposits in a State member bank is fixed as of the date of the termination of the insured status. No new business affects this status and it is only affected, favorable to the Corporation, by withdrawals from deposits that were on hand when the insured status terminated.

This seems to me to be the plain intention of the Act and fully disclosed in the hearings before the committees in the Congress.

It is argued that there was no thought of Congress to aid State member banks to rehabilitate after the termination of the insured status. Such may be true but would not affect the questions in this case. But I am unable to see why there isn't some merit in this idea for the reason that the Congress could have provided, by fair and equitable provisions, that the deposit insurance would be entirely withdrawn from State member banks under certain conditions.

I feel fully satisfied with the conclusions reached in the original opinion and overrule the motion for a new trial.

Order accordingly.